## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**AUNDREA HOLLIDAY**                    **CIVIL ACTION NO. 06-755-JVP-DLD**

**VERSUS**

**JO ANNE B BARNHART**
**COMMISSIONER OF SOCIAL**
**SECURITY**

## REPORT AND RECOMMENDATION

Plaintiff Aundrea Holliday seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for supplemental security income ("SSI") benefits.

### Procedural Background

Plaintiff is a 35-year old female with a twelfth (12th) grade education (rec. doc. 9). On November 7, 1995, plaintiff filed an application for SSI benefits alleging disability due to asthma and mental illness/depression and an inability to work beginning on May 29, 1995 (Tr. 153-156). Plaintiff's application was denied initially and on reconsideration (Tr. 157-161, 164-167). After a hearing on plaintiff's November 7, 1995, application, an Administrative Law Judge (ALJ) held that plaintiff was not eligible for SSI on September 21, 1998 (Tr. 355-363). Plaintiff filed a request for review of the September 21, 1998, SSI decision with the Appeals Council on October 23, 1998 (Tr. 372).

On June 21, 2001, plaintiff subsequently filed another application for SSI payments based on back pain following a work-related accident (Tr. 31-33). On October 17, 2002, the Appeals Council vacated the ALJ's decision on the November 7, 1995, application,

consolidated the November 7, 1995, and June 21, 2001, applications, and remanded the applications for further proceedings (Tr. 411-413).

Following the remand, the ALJ held two hearings on August 4, 2005, and August 31, 2005, but both were continued because the plaintiff was ill and because a medical expert was not available to testify (Tr.532-541; 542-547).  A third hearing was held on January 5, 2005, at which plaintiff and a vocational expert appeared and testified (Tr. 512-530).

On June 16, 2005, the ALJ issued a decision denying plaintiff's applications for benefits (Tr. 16-30).  In denying plaintiff's claim, the ALJ reached the fourth step of the five-step sequential analysis set forth in 20 C.F.R. §§ 404.1520, 416.920 The ALJ initially determined that plaintiff had not engaged in substantial gainful employment since the alleged onset date of disability (May 29, 1995), thereby satisfying the first step of the sequential process (Tr. 17).  At the second step, the ALJ determined that plaintiff had the following severe impairments: asthma, allergies, and morbid obesity, at all times, with the additional impairments of lumbar and right knee arthritis since about 2000.  *Id.*  The ALJ noted that plaintiff's representative did not argue that plaintiff either met a listing or was otherwise disabled due to depression at the January 2005 hearing; therefore, the ALJ determined that plaintiff's complaints of depression and anxiety were not "severe." *Id.*

At step three of the process, the ALJ determined that plaintiff's back and knee arthritis and asthma did not meet, or were not medically or functionally equivalent to sections 1.02, relative to major dysfunction of a joint, or 3.03, relative to asthma, of the listed impairments set forth in the Commissioner's regulations at 20 C.F.R. pt. 404, subpt. P, Appendix 1 (Tr. 16-19).  The ALJ considered plaintiff's impairments individually and in combination with her other impairment of severe obesity, and held that they did not meet

or equal any of the impairments as described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, Appendix 1 (Tr. 19).

At step four of the sequential process, the ALJ found that plaintiff had past relevant work experience as a telephone solicitor, inventory clerk, sandwich maker, janitor, child care attendant, home attendant, fast food cashier, and retail sales clerk (Tr. 29).   The ALJ made a finding, with the assistance of testimony from a vocational expert, that plaintiff had the residual functional capacity ("RFC")[1] to perform her past relevant work as a telephone sales clerk. *Id.* In making this determination, the ALJ made credibility assessments and considered the objective medical evidence offered in support of plaintiff's impairments (Tr. 19).   The ALJ acknowledged that plaintiff's severe impairments caused significant limitations, but he did not find plaintiff's allegations and subjective complaints to be supported by the medical evidence of record (Tr. 28).

The ALJ found that plaintiff retains the RFC to perform her past relevant work as a telemarketer and concluded that plaintiff does not meet the statutory criteria for a finding of disability  (Tr. 29-30). The ALJ's decision became final when the Appeals Council denied plaintiff's request for review on July 13, 2006 (Tr. 3-5).  Plaintiff, thereafter, filed this civil action, and this matter is properly before this Court for review.  See 42 U.S.C. §405(g).

In addition to the November 7, 1995, and June 21, 2001, applications for SSI, which are before the Court for review, plaintiff filed three prior applications for SSI on September 8, 1993, June 11, 1994, and June 12, 1995 (Tr. 86-89; 107-109; 129-131).  The 1993,

---

[1] Residual functional capacity ("RFC") is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, *i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule.  *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), *citing* SSR 96-8p.

1994, and 1995 applications were all abandoned after the initial denials (Tr. 20). Although these applications are not before the Court, medical evidence was submitted along with each of these applications, which was analyzed by the ALJ in arriving at his final decision in the underlying matter (Tr. 19-30).

### Statement of Errors

Although not specifically set forth by plaintiff, it seems that plaintiff raises the following errors: (1) the ALJ erred in finding that plaintiff's impairments do not meet or medically equal the Commissioner's listed impairments for major dysfunction of a joint or asthma; (2) the ALJ failed to consider the cumulative effects of plaintiff's impairments in determining RFC; and (3) the ALJ failed to consider plaintiff's subjective complaints.

### Governing Law

The Social Security Act provides for the payment of benefits to persons who have contributed to the program and "who suffer from a physical or mental disability." *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000), *citing* 42 U.S.C. § 423(a)(1)(D)(1991). As used in the Act, the term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period not less than twelve months. *Id.*, *citing* 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1987).

To determine whether a disability exists for purposes of the Act, the Commissioner must weigh the following elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the plaintiff's subjective evidence of pain

-4-

and disability; and (4) the plaintiff's age, education, and work history.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

In reviewing the Commissioner's decision to deny disability benefits, this Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards.  *See, e.g., Harrell v. Brown*, 862 F.2d 472, 475 (5th Cir. 1988).  Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion.  *Id.*

In applying this "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision.  *Id.*  A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the plaintiff's position.  *Id.*

However, the substantial evidence standard of review is not a mere rubber stamp for the Commissioner's decision, and it involves more than a search for evidence supporting the Commissioner's findings.  *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  The Court must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings.  *Id.*

At steps one through four of the five-step sequential analysis, the overall burden of proving disability under the Social Security Act rests on the claimant.  *Jones v. Heckler*, 702

F.2d 616, 620 (5th Cir. 1985).  The determination of a claimant's residual functional capacity ("RFC") between steps three and four is exclusively reserved for the Commissioner rather than for the claimant's physicians.  20 C.F.R. §§ 404.1527(e)(2), 404.1546.

## Discussion

The issue before this Court is whether the Commissioner's finding that plaintiff is not disabled is supported by the substantial evidence and was reached by applying the proper legal standards.  42 U.S.C. § 405(g).

### *Whether Plaintiff's Impairments Meet or Equal a Listing*

The burden is on the plaintiff to establish that her impairments meet or equal a listing. *Sulivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990).  The plaintiff must provide medical findings that support each of the criteria for the equivalent impairment determination.  *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).[2]

Plaintiff argues that her impairments specifically meet or are the medical equivalent of the listings of impairments for major dysfunction of a joint at 1.02 and asthma at 3.03 (rec. doc. 9, p. 4).  Plaintiff alleges that the ALJ erred in finding that her impairments did not meet or equal the listing of impairments.  *Id.*

Major Dysfunction of a Joint at 1.02 requires:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

---

[2] If the plaintiff's impairment is in the Listing of Impairments or is found to be equivalent to a listed impairment, a presumption of disability arises that makes further inquiry into work ability unnecessary. *See Sullivan v. Zebley*, 110 S.Ct. at 892.

(A).  Involvement of one major peripheral weight-bearing joint (i.e., hip, knees, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R. 404, subpt. P, appx. 1, §1.02.

Section 1.00B2b defines an "inability to ambulate effectively" as, "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. See 20 C.F.R. 404, subpt. P, appx.1, §1.00B2b.

The ALJ thoroughly reviewed the medical evidence submitted by the plaintiff in support of her claim.  Plaintiff began experiencing pain in her knee caused by arthritis diagnosed by Dr. Pamela Hollis in May 1998 (Tr. 348).  Dr. Hollis prescribed plaintiff Darvocet for her arthritis (Tr. 350). Dr. Hollis did not offer a work-related assessment of limitations relative to the plaintiff's arthritis, nor did she provide any diagnostic test reports to support her conclusions or diagnoses.  Based on these medical records, there is some evidence plaintiff experienced arthritis in 1998, but plaintiff's chief complaint of back and knee pain arose after a work-related accident in March 2000 (Tr. 381-390).

As a result of the March 2000 work-related accident, plaintiff underwent a lumbar MRI on November 29, 2000.   The MRI showed a slight right posterior L5-S1 disc bulge, slightly indenting the thecal sac, and desiccation of the L3-4, L4-5, and L5-S1 discs, but with otherwise normal disc heights (Tr. 400).  On May 18, 2001, an MRI of the right knee showed a mild myxoid degeneration of the menisci, with signs compatible with early degenerative joint disease affecting the medial compartment (Tr. 479).

Plaintiff was also involved in an automobile accident on August 4, 2002.  Two days after the accident, plaintiff retained an attorney and presented to a chiropractor for

evaluation (Tr. 475- 478).  Although the emergency room medical records are not in the record, plaintiff informed the chiropractor, Michael Goff, that she visited the emergency room after the accident and was diagnosed with musculoskeletal pain and contusions and treated with pain medication (Tr. 24; 475). Plaintiff did not present with complaints of knee pain or complications caused by the arthritis in her knee to Mr. Goff (Tr. 476).  In a report dated January 22, 2003, the chiropractor reported cervical, thoracic, and lumbar defects, with tenderness, spasm, and loss of range of motion.  (Tr. 475-478).   His impressions included traumatic hyperextension/hyperflexion injury to the cervical spine, compression of the cervico-brachial plexus, restricted segmental movement of the cervical region, cervicalgia, thoracic sprain and neuritis, lumbar sprain, sciatica, and lumbalgia. *Id.*   Mr. Goff's report does not mention plaintiff's previous complaints of knee pain caused by arthritis.  *Id.*  Mr. Goff conservatively treated the plaintiff and referred her for an orthopedic evaluation.  *Id.*  The ALJ noted that a chiropractor is not considered to be an acceptable medical source by the Social Security Administration (Tr. 24).   Because a chiropractor is not a "treating physician" or a "treating source," a chiropractor's opinion is not given controlling weight.  The ALJ considered the chiropractor's report along with other lay evidence, but did not give it the same weight as that of a medical doctor. *Id.*

On referral from the chiropractor, the plaintiff visited Dr. F. Allen Johnston for evaluation on January 23, 2003 (Tr. 473). Dr. Johnston performed a thorough exam of the plaintiff.  Plaintiff presented with pain in the head, neck, upper back, mid back, lower back, and pelvis. *Id.*  Plaintiff did not present with any complaints of knee pain or complications caused by the arthritis in her knees.  *Id.*  Although the plaintiff presented with tenderness to palpation in the cervical area, Dr. Johnston found that she had normal cervical lordosis,

a near full cervical range of motion, no muscle spasms present to palpation, her deep tendon reflexes in the upper extremities were intact and symmetrical, sensation was intact in the upper extremities, and motor strength testing in the upper extremity muscle groups revealed normal strength (Tr. 473-474).   Plaintiff also presented with tenderness to palpation in the lumbar area and decreased lumbar range of motion, no muscle spasm, the ability to walk heel and toe without difficulty, negative seated straight leg raises, and, in the lower extremities, intact and symmetrical deep tendon reflexes and sensations.   Visual inspection revealed normal lumbar lordosis.   *Id.*   A lumbar x-ray revealed no gross abnormalities, but was difficult to interpret due to the plaintiff's size.   *Id.*

Dr. Johnston's diagnostic impressions included chronic low back pain and lumbar spondylosis (Tr. 474).  He prescribed the plaintiff Darvocet N-100, Lortab, and a TENS unit, and referred her to physical therapy.   *Id.*   Plaintiff submitted for her initial physical therapy assessment on January 31, 2003, but returned only for two additional visits (Tr. 469-472). Plaintiff indicated in her initial visit that she was not employed but was involved in church activities and sang in the choir  (Tr. 471).   Plaintiff abandoned physical therapy after the March 5, 2003, visit  (Tr. 469).

On March 14, 2003, plaintiff returned to the Primary Care Group and requested a "work physical." (Tr. 443).   At that time, plaintiff stated that she was taking Azmacort, Albuterol, Indocin, and Motrin. *Id.*   Her diagnoses included an upper respiratory infection and degenerative joint disease of the knees (Tr. 444).   A nurse practitioner described plaintiff as a healthy female and included in her diagnostic impressions the opinion that plaintiff was "able to work with restriction of heavy lifting." *Id.*   There is no record of complaint of back or neck pain at this visit.

The medical records submitted by plaintiff from July 7, 2003 to July 17, 2004, consist of treatment for her asthma and upper respiratory infections.  During plaintiff's July 7, 2003, consultative exam with Internist, Dr. Chalasani, she stated that she had a one-year history of knee and back pain secondary to a motor vehicle accident, but there was no discussion of the TENS unit prescribed by Dr. Johnston (Tr. 415-418).  During a July 31, 2003, visit with the Primary Care Group, plaintiff neither complained of knee, back, or neck pain nor did she state that she was taking any medication for pain (Tr. 440-441).   Additionally, plaintiff had five other visits with the Primary Care Group from December 2003 through October 2004, and her complaints were mainly related to upper respiratory problems  (Tr. 494-498; 503-506).

Plaintiff's medical records show that she was prescribed Motrin for pain by the Primary Care Group on March 10, 2004, and Lortab on October 19, 2004 (Tr. 496-497; 503-504).  Other than these two prescriptions during 2004, it does not appear from her medical records with the Primary Care Group that plaintiff was receiving any medications or treatment relative to neck, lower back, or knee pain.  However, Dr. Darakhshan Wahid, with the Primary Care Group, opined on October 19, 2004,[3] that plaintiff "is unable to work due to her back pain secondary to her marked obesity" (Tr. 499).  No treatment records were submitted after October 2004 and no diagnostic test were offered in support of this statement.    On January 5, 2005, the day of the hearing before the ALJ, plaintiff listed the medications that she was currently taking as the following: Lortab, 500mg; TENS Unit;

---

[3] The ALJ's June 16, 2005 opinion states that Dr. Darakhshan Wahid's opinion was on July 17, 2004, but the date on the prescription pad seems to be October 19, 2004 - although it is hard to read.

Motrin 800mg; Advair 100/50mg; Albuterol Sulfate.  Plaintiff listed Dr. Darakhshan Wahid as the doctor who prescribed all of these medications.

Although plaintiff's treating physician, Dr. Wahid, opined that she was unable to work due to her back pain secondary to her obesity, Dr. Wahid did not offer a description of plaintiff's limitations.  The ALJ had good cause for not giving considerable weight to Dr. Wahid's opinion regarding plaintiff's ability to work because the opinion is conclusory, not supported by diagnostic testes, or other evidence. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).   Moreover, Dr. Wahid's opinion is afforded little weight because the determination that plaintiff is "unable to work" is a legal conclusion, not a medical opinion. *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

Although the May 2001, MRI of plaintiff's right knee did show evidence of degenerative changes in plaintiff's knee, which would have resulted in some pain, and plaintiff complained of back and neck pain after the August 2002, motor vehicle accident, substantial evidence supports the ALJ's finding that the medical evidence regarding plaintiff's back and knee impairments do not meet or equal the medical listing of 1.02 - Major Dysfunction of a Joint (Tr. 18).

Asthma at 3.03 requires:

*Asthma.* With:

B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year.  Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. 404, subpt. P, appdx. 1, §3.03.

Subsection 3.00C defines an "attack" as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room, or equivalent setting."

The medical evidence in the record shows that plaintiff's asthma attacks did not occur "at least once every 2 months or at least six times a year," as required to meet or equal the listing for asthma at 3.03.  The ALJ outlines in detail plaintiff's medical history relative to her treatment for asthma from 1993 through the January 5, 2005, hearing.  The medical evidence supports plaintiff's continued struggle with asthma and upper respiratory infections.   As observed by the ALJ, plaintiff remains on medication for asthma and requires regular medical follow-up (Tr. 18). Contrary to plaintiff's assertions of frequent and severe asthma attacks, the ALJ noted that the medical evidence shows that plaintiff was always quickly treated and released after each of her visits to the emergency room, did not present with severe asthma symptoms during her regular physician visits, did not approach listing level on pulmonary dysfunction studies, and was hospitalized only twice due to asthma, both in June 1996 (Tr. 267-280). [4]

In summary, the medical evidence submitted by the plaintiff reveals that the plaintiff has not suffered asthma attacks "occurring at least once every 2 months or at least six times a year;" therefore, the ALJ was correct in finding that plaintiff's impairment of asthma, although severe, does not meet or equal the listing at 3.03.

_____

[4]  The ALJ also considered the fact that plaintiff's asthma is controlled by medication. (Tr. 27). Although plaintiff has a long history with asthma and has taken many medications since 1993, the record reveals that plaintiff has only been hospitalized twice due to asthma - both in 1996. (Tr. 267-280).  Because plaintiff's asthma can be controlled with medication, the ALJ properly found that it was not a disabling condition. *James v. Bowen,* 793 F.2d 702, 706 (5th Cir. 1986).

The Effects of Obesity on the Listings

Plaintiff also suffers from obesity.   Effective October 25, 1999, the Social Security Administration (SSA) deleted 9.09, Obesity, from the Listing of Impairments.  SSR 02-1P; 64 FR 46122 (1999).   The SSA explained in the preamble to the final rule that listing 9.09 was deleted because the criteria in listing 9.09 did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity.  In the final rule, the SSA also provided guidance about the potential effects obesity has in causing or contributing to impairments in the musculoskeletal, respiratory, and cardiovascular body systems.

The SSA regulations specifically suggests that the cumulative effects of obesity should be considered with the plaintiff's other listed impairments.  As specifically applicable in this case, subsections 1.00(Q) and 3.00(I) provide that obesity should be considered in cumulation with impairments of the musculoskeletal system (1.00(Q)) and respiratory system (3.00(I)):

> Obesity is a medically determinable impairment that is often associated with disturbances of the musculoskeletal system [respiratory system], and disturbance of this system can be major cause of disability in individuals with obesity.  The combined effects of obesity with musculoskeletal impairments [respiratory impairments] can be greater than the effects of each of the impairments considered separately.  Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. 404, subpt. P, appdx. 1, §§ 1.00(Q), 3.00(I).

Thus, although there is not a specific listing for obesity, obesity is a factor in determining whether a plaintiff's impairments "meet or equal" a particular listing.   For

example,  an individual with obesity  "meets" the requirement of a listing if she has another impairment that, by itself, meets the requirements of a listing, which is not present in this case.  SSR-02-1P.   A listing is also met if there is an impairment that, in combination with obesity, meets the requirements of a listing.  *Id.*  Obesity, by itself, may be medically equivalent to a listed impairment if, for example, the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2d or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint due to any cause, with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A. Medical equivalence can also be satisfied if the plaintiff has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.  *Id.*

As required by the regulations, the ALJ considered the plaintiff's obesity in combination with her other impairments in determining whether the combination of impairments met the requirement of a listing or whether her obesity was the medical equivalent of a specific listing.  With respect to plaintiff's obesity and her ability to ambulate effectively, substantial evidence supports the ALJ's finding that plaintiff is limited in her ability to ambulate secondary to obesity, with additional impact from other impairments, but that she remains capable of performing at least sedentary work (Tr. 18).  The ALJ's finding is supported by both the fact that the medical evidence discussed above in connection with the discussion of listing 1.02 (major dysfunction of a joint) do not reflect any significant mechanical or neurological deficits of her low back or extremities and the fact that plaintiff is able to perform many daily activities without assistance.  *Id.*   For example, the record revealed that although the plaintiff must use an electric cart at the grocery store, she does

not use a cane or walker for ambulation (Tr. 524), plaintiff is able to heel and toe walk upon examination (Tr. 473-474), plaintiff is able to drive occasionally and perform certain household chores (Tr. 523), and plaintiff is raising her two children.

With respect to plaintiff's obesity and her asthma, the substantial medical evidence discussed above in connection with listing 3.03 (asthma) supports the ALJ's finding that since 1995, plaintiff's asthma has not worsened despite plaintiff's increase in weight.   The record as a whole supports the ALJ's finding that the plaintiff's obesity does not cause her impairments of asthma or arthritis to rise to the level to meet or equal any of the medical listings (Tr. 19).

The fact that obesity is a risk factor for other impairments, however, does not mean that individuals will obesity necessarily have any of these impairments.  SSR 02-1P.  It means that they are at a greater than average risk for developing the other impairments. *Id.*  Such is true for the plaintiff in this case.   The record does not reflect that at the current time, plaintiff suffered any impairment or combination of impairments that medically equals the above listings.  Moreover, there is no evidence to support plaintiff's allegation that the ALJ failed to consider plaintiff's obesity in connection with her other impairments, and the evidence supports the ALJ's finding that the plaintiff's impairments, considered alone or in combination, failed to meet or equal a listed impairment. *Id.*

### *Whether the ALJ Considered the Cumulative Effects of Plaintiff's Impairments in Determining RFC*

The ALJ must analyze the disabling effect each of the plaintiff's ailments and the combined effect of all of the impairments. *Loza v. Apfel,* 219 F.3d 378, 399 (5th Cir. 2000). The ALJ is required to consider the combination of unrelated impairments "to see if

together they are severe enough to keep the claimant from doing substantial gainful activity." *Scott v. Heckler*, 770 F.2d 482, 487 (5th Cir. 1985). The ALJ found at the medical evidence supports a finding that the plaintiff has the medically determinable "severe" impairments of asthma, allergies, and morbid obesity at all times herein, with the additional impairment of lumbar and right knee arthritis since about 2000" (Tr. 17). In fact, the ALJ found that the medical evidence supports that the plaintiff's obesity is likely her most significantly limiting impairment (Tr. 28). The regulations specifically instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing an individual's RFC. SSR 02-1p. Despite plaintiff's severe impairments, the ALJ found that the plaintiff is still able to perform daily activities and a sedentary level of work (Tr. 18).

The medical evidence discussed above in connection with listing 3.03 (asthma) supports the ALJ's finding that although plaintiff's asthma will require certain work-related restrictions and continued medication, it has been under reasonable control since 1993, with one[5] (sic) hospitalization in June 1996 (Tr. 27). The medical evidence discussed above in connection with listing 1.02 (major dysfunction of a joint) supports the ALJ's finding that the degenerative changes in plaintiff's knee might cause some work limitations, but would not, standing alone, significantly interfere with her ability to perform full-time work. *Id.* Additionally, the medical evidence supports the ALJ's finding that the plaintiff has not exhibited signs or symptoms related to mechanical or neurological lumbar deficits on physical examination. *Id.*

---

[5] Plaintiff was actually hospitalized twice in June 1996. See (Tr. 267-280). The ALJ previously notes this fact correctly in his ruling. (Tr. 21).

Finally, the record supports the ALJ's finding that plaintiff's obesity, in connection with her other impairments, does not prevent her from performing any and all levels of sustained work (Tr. 28). The record reveals that plaintiff maintained several jobs after the onset of the alleged disability (Tr. 518).   For example, in 1999, plaintiff worked for Washington Inventory Service as an inventory clerk (TR. 45-57); in 2000, she sold light bulbs over the telephone in 2000; and in 2003 and 2004, she worked at a daycare center and sat with the elderly (Tr. 516-517).   Working after the alleged onset date of a disability supports a finding of no disability. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Fraga v. Bowen*, 819 F.2d 1296, 1305 (5th Cir. 1987).

The ALJ considered the plaintiff's impairments alone and in connection when considering her RFC.  A review of the record reveals that substantial evidence supports the ALJ's analysis of plaintiff's RFC as follows:

> I find that the claimant is significantly limited due to her combination of impairments, but that her assertions of severe, recurrent asthma attacks since May 29, 1995, and of severe, debilitating low back and knee pain since about 2001 are contradictory to the objective medical evidence of record.  As to her obesity, while this impairment causes the most significant limitations, it does not prevent the claimant from ambulating at least 2 hours in an 8 hour day, nor does it prevent her from performing most daily activities.  As noted above, the claimant has not demonstrated any significant mechanical or neurological deficits on repeated physical examination, was not noted to have any significant difficulty with ambulation during her physical examinations, does not use a cane or walker for ambulation, does some household chores, is raising two children, drives occasionally, participates in church activities and sings in the choir, and worked recently as a daycare worker, sitter with the elderly, and telemarketer.
>
> (Tr. 28).

The ALJ based his RFC finding, in part, on the testimony of the vocational expert, Douglas Kuylan, who testified at the January 5, 2005, hearing that plaintiff could perform her past occupation of telephone solicitor (Tr. 528).

Moreover, although plaintiff's representative clearly abandoned her claim for disability based on mental illness,[6] the ALJ considered the complaints of mental illness in connection with plaintiff's other complaints in evaluating the claim (Tr. 29). The ALJ took into consideration the fact that the although the medical records show that plaintiff had been prescribed medication for depression, the examining medical professional concluded that plaintiff was no more than "very mildly depressed" and was capable of managing her own affairs (Tr. 290-292).   Additionally, the ALJ noted that on August 28, 1996, Dr. R. H. Rolston, a psychologist, completed a Psychiatric Review Technique Form and noted that plaintiff had no severe mental impairments or mental functional limitations (Tr. 293-300). The ALJ considered the evidence submitted and substantial evidence supports the ALJ's finding that plaintiff does not suffer from "severe" mental impairments or mental functional limitations (Tr. 29).

### ***Whether the ALJ Considered Plaintiff's Subjective Complaints***

Plaintiff argues that the ALJ failed to consider her subjective complaints of pain and the effects of her medication on her ability to work (rec. doc. 9, pp. 9-10).  The record shows that the ALJ considered plaintiff's symptomology, pain, functional limitations and restrictions on activities of daily living and concluded that while plaintiff's assertions were partially credible, they were exaggerated and lacked corroboration and substantiation in the

---

[6] The plaintiff's representative abandoned the claim for disability based on mental illness at the January 5, 2005 hearing. (Tr. 515).

medical evidence (Tr. 28).  The ALJ considered the plaintiff's statement that she is in severe pain and takes Lortab, which makes her sleepy, and Albuterol, which makes her shaky, but also noted that the record reveals that plaintiff maintained several jobs after the onset of the alleged disability, which are specifically set forth in the previous section (Tr. 518).

The ALJ considered plaintiff's testimony regarding her pain and the effects of her medication on her ability to work, her medical records, and her past work history.  Both the record and plaintiff's testimony reveal that the plaintiff was able to work after the onset of the alleged disability of asthma and mental illness on May 29, 1995, and after the assertions of back and neck pain following the work-related injury in 2000 and the motor vehicle accident in 2002.  Plaintiff testified that she worked at a daycare center and sat with the elderly in 2003 and 2004, which was after plaintiff began taking the Lortab for pain (Tr. 473-474) and Albuterol for asthma.   Therefore, the ALJ did consider the plaintiff's complaints of pain and the side effects of her medication, and substantial evidence supports his finding that plaintiff's subjective complaints were exaggerated and do not prevent plaintiff from performing some level of sedentary work.   See Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995)(working after the alleged onset date of a disability supports a finding of no disability); Fraga v. Bowen, 819 F.2d 1296, 1305 (5th Cir. 1987).

Additionally, the ALJ properly considered plaintiff's daily activities in deciding her disability status. Leggett v. Chater, 67 F.3d 558, 565 fn. 12  (5th Cir. 1995), citing Reyes v. Sullivan, 915 F.2d 151, 155 (5th Cir. 1990).  The record reflects that after the onset of the alleged disability, plaintiff was able to participate in church activities and sing in the church choir (Tr. 471); drive occasionally (Tr. 523); perform limited household chores (Tr. 523);

and care for her two children (Tr. 524-525).  Thus, substantial evidence supports the ALJ's finding that plaintiff is not disabled despite her subjective complaints of pain and adverse side effects of medication.

### Recommendation

For the reasons assigned, it is recommendation of the Magistrate Judge that the decision of the Commissioner denying supplemental social security insurance benefits to plaintiff should be **AFFIRMED,** and plaintiff's complaint should be **DISMISSED**.

Signed in Baton Rouge, Louisiana, on January 31, 2008.

**MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

AUNDREA HOLLIDAY                    CIVIL ACTION NO. 06-755-JVP-DLD

VERSUS

JO ANNE B BARNHART
COMMISSIONER OF SOCIAL
SECURITY

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 31, 2008.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

-21-